McDonald, J., concurred in part and dissented in part.

Randy Thomas McGOWAN, Appellant,

v.

Fredda K. McGOWAN, Appellee.

Fredda K. McGOWAN, Cross-Appellant,

v.

Randy Thomas McGOWAN,
Cross-Appellee.

Court of Appeals of Kentucky.

Dec. 30, 1983.

Richard T. Ford, Owensboro, for Randy Thomas McGowan.

Robert M. Kirtley, Kirtley, Kirtley & Damron, Owensboro, for Fredda K. McGowan.

GUDGEL, Judge:

This is an appeal and cross-appeal from a decree of dissolution entered by the Daviess Circuit Court. The court ordered appellant, Randy Thomas McGowan, to pay $10,000 lump-sum maintenance, $1,500 in attorney's fees, and 20.5% of his income for child support. He contends that the court erred (1) by failing to dismiss the action for lack of jurisdiction, (2) by awarding appellee, Fredda K. McGowan, maintenance, (3) by failing to award an amount certain as child support, (4) by awarding appellee attorney's fees, and (5) by failing to rule on his motion to suspend child support payments. We agree with appellant's third contention but disagree with the others. On cross-appeal, appellee contends that the court erred by setting aside the substantive provisions of a separation agreement. We disagree. In light of our conclusions, we affirm in part and reverse in part on the direct appeal, and affirm on the cross-appeal.

The parties married in Daviess County on July 10, 1971. Appellee worked while appellant attended Kentucky Wesleyan College. After his graduation, they moved to Louisville where appellant attended dental school for four years while his wife worked as a secretary. In July, 1979, after appellant received his degree in general dentistry, they moved to Valhall, New York, while appellant completed his residency in oral surgery at the Westchester County Medical Center. In December, 1979, they separated, and, in late April or early May, 1980, appellee returned with their daughter to Owensboro. She then filed a petition for dissolution in the Daviess Circuit Court. On May 28, 1980, appellee filed a document styled "separation, child custody, and property settlement agreement." Appellant then filed a motion to dismiss the divorce petition for lack of jurisdiction, improper venue, insufficiency of process, and insufficiency of service of process. Appellant's motion was denied on August 15, 1980, because the court found that the separation agreement signed by appellant was "valid insofar as it constituted an entry of appearance to this action."

The parties then proceeded to a hearing before a domestic relations commissioner and adduced evidence as to the circumstances surrounding the separation agreement and as to their respective financial conditions. On May 1, 1981, the commissioner filed a report in which he recommended that the separation agreement be found to be unconscionable, that the marriage be dissolved, and that Mrs. McGowan be awarded custody of the parties' child and $75.00 per week temporary child support. The trial court adopted the recommendations of its commissioner on July 23, 1981,

and ordered the parties to either submit a revised separation agreement or to take further proof on the issues of property division, maintenance, and child support. On July 29, 1981, appellant moved the court to suspend its order requiring him to pay child support because he was currently unemployed. On August 5, 1982, without referring to or ruling on appellant's July 29 motion, the court entered a final judgment. The court awarded appellee $10,000 in lump-sum maintenance, $75.00 a week in child support to be automatically escalated each year to 20.5% of appellant's annual income, and $1,500 in attorney's fees. This appeal and cross-appeal followed.

## I.

▮▮▮ We must first deal with appellee's cross-appeal. She argues that the court erred by setting aside the substantive portions of the separation agreement. We disagree. Ordinarily, a separation agreement is unconscionable and must be set aside if the court determines that it is manifestly unfair and unreasonable. *Wilhoit v. Wilhoit,* Ky., 506 S.W.2d 511 (1974). However, an agreement can also be set aside if it results from fraud, undue influence, or overreaching. *Peterson v. Peterson,* Ky. App., 583 S.W.2d 707 (1979). Here, the evidence clearly established that appellant was induced to sign the agreement as a result of overreaching and undue influence on his wife's part. She presented him with the agreement which, among other things, provided that he would pay her ⅓ of his income from the practice of dentistry, on the morning of May 5, in New York, and told him that if he hadn't signed it by early that afternoon, he would have to appear in court in Kentucky within two weeks. Moreover, she attempted to make him feel guilty about dragging their young daughter through a contested divorce. Further, she refused to give him a copy of the agreement or to allow him time to consult a lawyer. Appellant also testified that he was in a highly emotional state, that he did not understand the economic impact of the terms of the agreement, and that he had no understanding of Kentucky law pertaining

to the treatment of professional degrees in divorces. In light of the evidence, we cannot say that the court erred in setting the substantive portions of the separation agreement aside. *Peterson, supra.*

## II.

▮▮▮ Appellant's first contention on the direct appeal is that the court did not validly acquire personal jurisdiction over him. Although appellant was never personally served with process, the court found that it had personal jurisdiction because the separation agreement filed with the court expressly stated that it constituted his entry of appearance for all purposes and that he waived all procedural requirements. Although the court set aside the substantive portions of the separation agreement, it specifically found that the entry of appearance portion of the agreement was valid. An entry of appearance may be made by a written declaration, as was done here, *Smith v. Gadd,* Ky., 280 S.W.2d 495 (1955), and a party so entering an appearance waives the requirement that he be served. *Brock v. Saylor,* 300 Ky. 471, 189 S.W.2d 688 (1945). Because there is no evidence as to the circumstances surrounding the signing of the agreement which would support a finding that appellant did not understand that he was submitting himself to the jurisdiction of the Kentucky court when he signed the agreement, we cannot say that the court's finding that this portion of the agreement was valid is erroneous.

▮▮▮ Appellant also argues that the court lacked jurisdiction because neither party had resided in Kentucky for 180 days prior to the filing of the petition for dissolution as required by KRS 403.140(1)(a). Ordinarily, as appellant points out, actual residence in the state for the requisite statutory period is required before a dissolution action may be maintained. *Lanham v. Lanham,* 300 Ky. 237, 188 S.W.2d 439 (1945). However, there is an exception to that rule when the divorcing parties' absence from the state is temporary in nature. *See, e.g., Broaddus v. Broaddus,* Ky., 280 S.W.2d 144

(1955); *Combs v. Combs*, 301 Ky. 463, 192 S.W.2d 395 (1946). Here, the parties left Kentucky so that appellant could receive advanced training in oral surgery. However, they used appellee's parents' Daviess County address as their permanent address, registered and insured their car in Kentucky, and kept Kentucky drivers' licenses. They also indicated that they hoped to return to Kentucky when appellant completed his training if he could find work here. Thus, the evidence showed that, at the time the parties left, they only intended to be temporarily absent from this jurisdiction. Therefore, we cannot say that the court's finding that the 180 day residence requirement had been met was erroneous. Further, appellant's contention that venue of this action did not lie in Daviess County is also without merit.

### III.

Next, appellant contends that the court erred by awarding appellee $10,000 lump-sum maintenance. The court found that appellee was entitled to such an award under the authority of *Leveck v. Leveck, Ky. App.*, 614 S.W.2d 710 (1981). In *Leveck* we held that, even though a husband's medical license could not be considered to be marital property, his wife, who had worked to support him while he was in medical school, was entitled to receive $10,000 in lump-sum maintenance as "compensation for her investment in the doctor's medical education." Appellant argues that this case is distinguishable from *Leveck* and from the prior case of *Inman v. Inman, Ky.App.*, 578 S.W.2d 266 (1979) (*Inman* I), in which we held that a dental license *was* marital property. He urges, therefore, that the court erred by making an award of maintenance because the evidence adduced by appellee did not satisfy the statutory prerequisites for such an award. Appellee, on the other hand, argues that she should be awarded a monetary sum pursuant to the formula suggested in dictum in the recent case of *Inman v. Inman, Ky.*, 648 S.W.2d 847 (1982). (*Inman* II). We disagree with the contentions of both parties and take this opportunity to resolve the confusion engendered by the different approaches taken in treating professional degrees in those dissolution cases where one of the spouses has worked so that the other can acquire a degree.

■ *Inman* II settled one issue: a professional degree may not be treated as marital property. We are not persuaded, however, to adopt the view set forth in dictum in *Inman* II that a spouse who has worked and financially contributed to the other spouse's acquisition of a professional degree should automatically receive a monetary award based on a prescribed formula. Our dissolution of marriage statutes simply do not authorize trial courts to make such an award. Moreover, we believe that those trial courts which attempt to mechanically apply such a formula would wreak havoc at least as often as they succeed in working equity. This does not mean, however, that we believe the efforts and economic sacrifices of one spouse who has put the other spouse through school should go unrecognized and uncompensated if they later divorce. On the contrary, we believe that the marital property statute, KRS 403.190, and the maintenance statute, KRS 403.200, already include an adequate means for compensating the non-professional spouse, and, thus, that it would be inappropriate for us to judicially create such a right.

■ KRS 403.190(1) provides that a division of marital property shall be made "without regard to marital misconduct in just proportions considering all relevant factors including: (a) Contribution of each spouse to acquisition of the marital property.... (d) Economic circumstances of each spouse when the division of property is to become effective...." As enacted, the statute requires only that property be divided in "just proportions;" it does not require that the division be equal. *Quiggins v. Quiggins, Ky.App.*, 637 S.W.2d 666 (1982). Thus, if a divorce occurs shortly after a professional spouse has acquired a degree, an award of the lion's share of the parties' marital property to the working spouse can be justified under KRS 403.190(1)(a) because that spouse will have contributed

more to its acquisition. Moreover, if the divorce occurs some years later, the court can still consider the working spouse's contribution to the professional degree in determining how to divide their marital estate. In addition, due to the degree, the professional spouse, no matter when the divorce occurs, will probably possess a larger earning capacity than the working spouse. KRS 403.190(1)(d) permits the court to consider this "economic circumstance" in dividing the parties' marital property. Thus, here again, the court would be justified in awarding the non-professional spouse a larger portion of the marital estate.

*Inman I* provides a useful example to demonstrate our view of how the statute can be applied to situations where one spouse has worked so that the other can acquire a professional degree. Mrs. Inman worked as a teacher to finance her husband's education as a dentist and continued to work up until the time the parties separated. At the time of the separation, they had accumulated a considerable amount of property, but it was heavily encumbered, so that their net worth was close to zero. The trial court awarded Mrs. Inman most of the parties' marital property and required Dr. Inman to pay most of their marital debts. In our view, the court's division of property would have been authorized by the statute even if Dr. Inman's dental degree had not been treated as marital property. With her lower salary, Mrs. Inman could not pay off the parties' debts or earn enough to purchase substitute property. Thus, the parties' respective economic circumstances alone prevented the court's unequal division of marital property from amounting to an abuse of discretion. KRS 403.190(1)(d).

Similarly, the maintenance statute, KRS 403.200, explicitly authorizes a court to consider the economic circumstances of the parties, including the fact that one has acquired a professional degree with the assistance of the other, in determining whether to award maintenance and, if so, how much. True enough, the statute only permits maintenance to be awarded if the spouse seeking it "(1)(a) Lacks sufficient property,

including marital property apportioned to him, to provide for his reasonable needs; and (b) Is unable to support himself through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home." However, while these statutory prerequisites seem to preclude an award of maintenance to a spouse who has contributed to the other spouse's professional degree if the non-professional spouse can support him or herself through appropriate employment, the statute must be applied in the light of *Casper v. Casper,* Ky., 510 S.W.2d 253 (1974), and its progeny. *Atwood v. Atwood,* Ky.App., 643 S.W.2d 263 (1982); *Combs v. Combs,* Ky.App., 622 S.W.2d 679 (1981).

*Casper* interpreted KRS 403.-200(1)(b) to mean that an award of maintenance is appropriate when the spouse seeking it is unable to support him or herself according to the standard of living established during the marriage. Moreover, KRS 403.200(2) requires the court to consider not only "the standard of living established during the marriage," KRS 403.-200(2)(c), but also "the ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance." KRS 403.200(2)(f). Thus, in cases where a divorcing couple may have begun to enjoy the fruits of increased earnings resulting from a professional spouse's degree, a court can, under the statute, properly consider the impact of a divorce on the non-professional spouse's standard of living. If the court finds that the non-professional spouse will not be able to maintain a standard of living reasonably similar to the one enjoyed during the marriage and that the professional spouse can afford it, an award of maintenance to supplement the non-professional spouse's income would be appropriate. This would be especially true in those instances where there is little or no marital property to divide. In such cases, through an award of maintenance, the court will be justifiably permitting the non-professional spouse to

recoup most of his or her investment in the other spouse's professional degree.

We turn now to a consideration of this case in light of our previous discussion. The parties divorced as appellant was completing his training as an oral surgeon. They had accumulated no marital property except a car, some furniture, and personal effects. The court found that appellee had earned a total of $44,000 during the years in which she worked to put appellant through undergraduate and dental school. All of her earnings, however, were spent to pay living, not educational, expenses. Further, appellee did not work during appellant's residency as an oral surgeon. Appellant, on the other hand, was indebted for $30,000 worth of educational loans, and, at the time of the parties' divorce, was receiving only $19,000 a year in salary. Shortly before the divorce became final, he filed an affidavit stating that he was unemployed and was applying for a commission in the U.S. Army. Had the court applied the formula suggested in *Inman II* for calculating the value of appellant's degree, appellant would be obligated to repay his ex-wife $44,000 plus some amount representing the "potential increase in his earnings made possible by the degree." Testimony before the trial court indicated that oral surgeons make anywhere from $35,000 to $200,000 a year, so any award for increased potential earnings, even if based only on that proportion of appellant's earnings attributable to his regular license to practice dentistry, would be based on figures substantially higher than his actual earnings to date. Moreover, application of the formula would not permit the trial court to take into account appellant's indebtedness for educational loans. Thus, this case amply demonstrates the problems the formula approach suggested in *Inman II* would create.

The trial court awarded $10,000 in lump-sum maintenance without specifically awarding anything for appellee's contribution to appellant's degree. We believe that this award was both fair and authorized by KRS 403.200. At the time of the divorce, appellee was earning $8,600 per year, while appellant was earning $19,000. Because appellee's salary clearly will not allow her to enjoy anything approaching the standard of living which she enjoyed as appellant's wife, she was entitled to an award of maintenance. *Casper, supra.* In making an award, the court took into account appellant's indebtedness for educational loans, the fact that appellee had remarried and was thus not entitled to periodic maintenance, and the fact that, while appellant "could not have matriculated without the wife's aid and assistance," her contributions "will not greatly inure to his direct financial enhancement." Furthermore, the court ordered appellant to pay at least $300 per month in child support, all of their child's medical and dental expenses, and $1,500 of appellee's attorney's fees. In light of the evidence, we cannot say that the court erred in awarding maintenance or that there was any abuse of discretion in the amount awarded. Accordingly, we affirm the portion of the judgment which awards appellee $10,000 in lump-sum maintenance.

### IV.

Next, appellant argues that the court erred in providing for an automatic annual adjustment of child support to a figure equal to 20.5% of his income. We agree. The formula adopted by the court effectively allows appellee to receive an automatic increase in child support without filing a motion pursuant to KRS 403.250(1). We are of the opinion that KRS 403.250(1) provides the exclusive method for effecting a modification of an award of child support in those instances where the parent paying child support has not agreed to pay automatic increases based on a percentage of earnings.

### V.

Next, appellant contends that the court erred by ordering him to pay $1,500 of appellee's attorney's fees. However, appellant failed to join appellee's attorney as a party to this appeal. Therefore, we are unable to consider this contention. *Beaver v. Beaver*, Ky.App., 551 S.W.2d 23 (1977).

### VI.

 Finally, appellant contends that the court erred by failing to rule specifically on his motion to suspend child support payments and to compel visitation. However, he also moved to have a final judgment entered at the same time. The court entered such a judgment just a week later, on August 5, 1982. That judgment contains the court's final orders as to child support and visitation. Thus, it effectively nullified the temporary orders appellant sought to suspend and enforce. Therefore, there was no error in the court's failure to rule on appellant's motion.

So much of the judgment as provides for an automatic increase in child support is reversed and remanded for further proceedings consistent with this opinion; the remainder of the judgment is affirmed.

All concur in the opinion of GUDGEL, J., except HAYES, C.J., and MILLER, McDONALD and PAXTON, JJ., who concur in part and dissent in part by separate opinions.

MILLER, Judge, concurring in part and dissenting in part:

I concur with the majority opinion with the exception of my view that the record does not support an award of maintenance within the purview of KRS 403.200. I would not sustain the maintenance award. This is true notwithstanding the majority's analysis of *Inman v. Inman,* Ky., 648 S.W.2d 847 (1982) (*Inman II*), KRS 403.200 and KRS 403.190, with which I agree.

McDONALD, Judge, concurring in part and dissenting in part:

The contributing nonprofessional party to this type situation should be permitted to have evaluated whatever his/her contribution was toward the attainment of the degree. After the contribution is evaluated in dollars and cents, applicable interest would be fixed and applied. This sum would be paid back under an award based upon the inherent power of the trial court to do equity until the legislature has an opportunity to address the issue. The contributing nonprofessional would be made "whole."

I do not agree with any evaluations of a spouse's expectations of "the good life," or any evaluation of an enhanced expectation of greater earning power.

Why should the professional under these circumstances be subjected to such incalculable and unpredictable forces? A professional degree is not an absolute guarantee, in this day and time, of affluence. Many nonprofessionals may achieve an earning power comparable to that of a professional without incurring the educational expenses of the professional student.

A simple return of the contribution (constructive trust theory) with fair interest would be acceptable under the "just proportions" mandate and is all that should be expected.

PAXTON, Judge, concurring in part and dissenting in part:

I concur with the majority, excepting that portion of the opinion that deals with maintenance. The majority's treatment of maintenance is troublesome to me in two fundamental respects. First, the majority says that "[I]f a divorce (sic) occurs shortly after a professional spouse has acquired a degree, an award of the lion's share of the parties' marital property to the working spouse can be justified under KRS 403.-190(1)." *Ante* at 223. The error here is that the *Inman* concept was developed because there was no "lion's share" to award. Second, the majority talks about awarding maintenance to help the non-professional spouse "maintain a standard of living reasonably similar to the one enjoyed during the marriage." And therein lies the crux of the problem. In the usual case, the standard of living maintained during the marriage would be rather spartan, where the marriage is dissolved immediately after acquisition of the professional degree or license, for example. I am of the opinion we should be concerned with helping the non-professional spouse realize, to some extent, the expectations of the "good life"

that probably caused him or her to support the professional spouse in the first place.

I believe the trial court erred in awarding Fredda $10,000.00 as lump-sum maintenance. The trial court concluded that this award was not governed by the principles enunciated in *Inman v. Inman,* Ky.App., 578 S.W.2d 266 (1979) (*Inman I*), and furthermore that Fredda was not entitled to maintenance because she could support herself through appropriate employment. KRS 403.200(1)(b). The majority ignores this finding, yet there is substantial evidence in the record to support it, so we cannot say it is clearly erroneous. CR 52.01.

While it may appear strange that Fredda is denied maintenance because she can support herself, and then be awarded maintenance based on *Leveck v. Leveck,* Ky.App., 614 S.W.2d 710 (1981), a careful reading of *Inman I, Leveck, Moss v. Moss,* Ky.App., 639 S.W.2d 370 (1982), and *Inman v. Inman,* Ky., 648 S.W.2d 847 (1982) (*Inman II*), suggests that we are dealing with an issue that has not clearly found a home as either maintenance or property.

In *Inman I,* Sue Inman was not entitled to maintenance. This court held that she had a property interest in her husband's dental license in order to enable the trial court to "work equity." In *Leveck,* Judith Leveck was found to be entitled to maintenance. Terrence Leveck's medical license was not treated as property, but the trial court "worked equity" by awarding Judith $10,000.00 in lump-sum maintenance in addition to periodic maintenance. In *Moss,* Linda Moss was awarded periodic maintenance, and this court in considering Thomas Moss's pharmacy degree as marital property, said:

> [W]e need make clear initially that our remarks are limited in effect to the acquisition of the pharmacy degree and not the subsequently issued license.

*Moss,* 634 S.W.2d at 374. This court went on to remand the case to the trial court with instructions that:

> Mrs. Moss's interest is to be restricted to recouping her portion of the education investment. The extent of the return

upon this investment is to be "the amount spent for direct support and school expenses during the period of education, plus reasonable interest and adjustments for inflation."

*Id.* at 375, *quoting Inman I,* 578 S.W.2d at 269.

In *Inman II,* our Supreme Court, in reversing this court, stated:

> If the issue was before this court, we would be constrained to the view that the proper formula to be followed in placing a value on an educational degree secured by a spouse, to which the other spouse contributed financially, is to measure the recovery by the amount of money the non-college going spouse contributed toward living expenses, the amount of money contributed for educational costs, and the potential for increase in future earning capacity made possible by the degree, thus not treating the degree as marital property.

648 S.W.2d at 852.

In *Inman I,* the wife was not entitled to maintenance so the degree was treated as marital property. Now, in *Inman II,* our Supreme Court is suggesting that Sue Inman is eligible for a monetary award even though she is not entitled to maintenance and without considering the degree as marital property.

In *Leveck,* the contributing spouse was found to be entitled to maintenance, and equity was attained by the awarding of lump-sum maintenance in addition to periodic maintenance. In *Moss,* this court called a pharmacy degree marital property, but made it clear that it only wanted Mrs. Moss to recoup her investment; she was not to share in the rewards of the license.

I believe the law, in Kentucky, is that one who contributes financial support toward a spouse's acquisition of an educational degree is entitled, upon dissolution of the marriage, to recover a monetary award from the spouse without regard to entitlement for maintenance, nonmarital property, or marital property and without regard to whether the degree, or subsequently issued license, is marital property. This case

should be remanded to the trial court with instructions to make the educational-degree monetary award; then, to effect an assignment of nonmarital property, KRS 403.-190(1); then, to divide the marital property pursuant to KRS 403.190(1); and, finally, to consider whether *either* spouse is entitled to maintenance.

The trial court, in setting the amount of the educational-degree award should take into consideration the amount of money Fredda contributed toward living expenses and educational costs, and the potential increase in Randy's earnings made possible by the degree. *Inman II, supra.* "The Court of Appeals is bound by and shall follow applicable precedents established in the opinions of the Supreme Court." SCR 1.030(8)(a).

HAYES, Chief Judge, concurring in part and dissenting in part:

I concur with the majority decision except in regard to the award of maintenance. I agree with the dissenting opinion that J. McDonald has filed herein except that I believe it was erroneous for the trial judge to award maintenance after making a finding that the wife was not entitled to maintenance. In this respect, I agree with Judges Miller and Paxton.