RENDERED:  MARCH 12, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0420-MR

DUSTIN WAYNE LITTLE                                                    APPELLANT

v.
APPEAL FROM LESLIE CIRCUIT COURT
HONORABLE CLINT HARRIS, JUDGE
ACTION NO. 19-CI-00084

KEISHA NICOLE LITTLE                                                    APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  JONES, LAMBERT AND L. THOMPSON, JUDGES.

THOMPSON, L., JUDGE:  Dustin Little appeals from an order of dissolution of

the Leslie Circuit Court and an order denying a motion to alter, amend, or vacate

the dissolution order.  Finding no error, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

Dustin and Keisha Little were married on July 24, 2010. The parties stayed together until Appellee filed a petition for dissolution of marriage in April of 2019. During the marriage, two children were born, A.L. (hereinafter referred to as Child 1) and I.L. (hereinafter referred to as Child 2).[1] Child 1 is about three years older than Child 2.

When the parties were married, Appellee was a registered nurse. During the course of the marriage, Appellee returned to school and earned an advanced degree. At the time of the petition for dissolution, Appellee was a nurse anesthetist working at Appalachian Regional Healthcare in Hazard, Kentucky, and she was making around $200,000 per year. Appellant was a clerk at Appalachian Regional Healthcare in Hazard, Kentucky, and was making about $34,000 per year. Also during the course of the marriage, the parties purchased a home in Perry County, Kentucky.

The parties separated on or about April 27, 2019. At this time, Appellee moved from the marital home, and she and the children moved in with her parents in Leslie County, Kentucky. On April 29, 2019, Appellee filed the underlying dissolution action in Leslie Circuit Court. On July 8, 2019, Appellant filed his response. Multiple motions were later filed and discovery was conducted.

---

[1] We will not use the names of the children in order to protect their privacy.

On October 25, 2019, the Leslie Circuit Court conducted a final hearing on all the issues. The hearing lasted approximately 13 hours and the court heard testimony from 20 witnesses. At the conclusion of the hearing, the court orally ruled on all the issues from the bench. On December 2, 2019, a final order was entered reflecting the court's decisions. Both parties filed motions to alter, amend, or vacate, and a hearing was held on January 6, 2020. This hearing lasted around 40 minutes. The court again made oral rulings from the bench, and an order was entered on February 18, 2020, reflecting the court's oral rulings. This appeal followed.

## ANALYSIS

Before we discuss the merits of this case, we must first address Appellant's lack of compliance with Kentucky Rules of Civil Procedure (CR) 76.12(4)(c)(iv) and (v). These rules state that a brief must have ample references to the record. Appellant's brief has zero references to the record. Appellee requests that we either strike the brief or review for manifest injustice only. We decline Appellee's request and will review this case on the merits. We do so because in Appellant's reply brief, he corrects his lack of record citation. A reply brief can be used to correct omissions and procedural defects in the original brief. *Hollingsworth v. Hollingsworth*, 798 S.W.2d 145, 147 (Ky. App. 1990).

-3-

Appellant's first argument on appeal is that the trial court erred in denying his motion to change venue under the doctrine of *forum non conveniens*. On August 14, 2019, Appellant filed a motion requesting that the court transfer the dissolution proceeding to the Perry Circuit Court. Appellant argued it was a more appropriate venue to hear the case because the parties lived in Perry County prior to separation, all of the marital assets were in Perry County, the parties both worked in Perry County, and the children were raised in Perry County. On September 9, 2019, the trial court entered an order denying the motion.

> The doctrine of forum non conveniens vests in a court, before which an action is brought, the discretion to refuse to accept jurisdiction, and such a determination will not be reversed by an appellate court, except where such determination is found to be an abuse in the exercise of that discretion.

*Williams v. Williams*, 611 S.W.2d 807, 809 (Ky. App. 1981) (citations omitted). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

In the case at hand, we believe Appellant waived his right to contest the venue by not timely raising the issue. Appellee filed the petition for dissolution on April 29, 2019. Appellant filed his answer on July 8, 2019. At that time, Appellant did not raise the *forum non conveniens* issue. After filing his response, Appellant made multiple motions, propounded a set of interrogatories, and allowed

an agreed order to be entered.  It was not until August 14, 2019, that Appellant first raised the venue issue.  This was almost four months after Appellee filed her petition for dissolution.  By not making a timely motion and by taking substantial action in the Leslie Circuit Court, we conclude that Appellant waived his right to raise *forum non conveniens*.  *See Stipp v. St. Charles*, 291 S.W.3d 720, 724-25 (Ky. App. 2009).

Appellant's second argument on appeal is that the trial court erred in holding that a 50/50 split in parenting time was not in the children's best interests.  The trial court awarded the parties joint custody but awarded more parenting time to Appellee.  The court held that Appellant did not have adequate family support which would allow him to work full time and care for the children.  The court also took into consideration that Child 1 suffered from separation anxiety and did not like to be away from Appellee.  Appellant argues that he should have been awarded equal parenting time.

Kentucky Revised Statute (KRS) 403.270(2) states:

> The court shall determine custody in accordance with the best interests of the child and equal consideration shall be given to each parent and to any de facto custodian. Subject to KRS 403.315, there shall be a presumption, rebuttable by a preponderance of evidence, that joint custody and equally shared parenting time is in the best interest of the child.  If a deviation from equal parenting time is warranted, the court shall construct a parenting time schedule which maximizes the time each parent or de facto custodian has with the child and is consistent

-5-

with ensuring the child's welfare. The court shall consider all relevant factors including:

(a) The wishes of the child's parent or parents, and any de facto custodian, as to his or her custody;

(b) The wishes of the child as to his or her custodian, with due consideration given to the influence a parent or de facto custodian may have over the child's wishes;

(c) The interaction and interrelationship of the child with his or her parent or parents, his or her siblings, and any other person who may significantly affect the child's best interests;

(d) The motivation of the adults participating in the custody proceeding;

(e) The child's adjustment and continuing proximity to his or her home, school, and community;

(f) The mental and physical health of all individuals involved;

(g) A finding by the court that domestic violence and abuse, as defined in KRS 403.720, has been committed by one (1) of the parties against a child of the parties or against another party. The court shall determine the extent to which the domestic violence and abuse has affected the child and the child's relationship to each party, with due consideration given to efforts made by a party toward the completion of any domestic violence treatment, counseling, or program;

(h) The extent to which the child has been cared for, nurtured, and supported by any de facto custodian;

(i) The intent of the parent or parents in placing the child with a de facto custodian;

(j) The circumstances under which the child was placed or allowed to remain in the custody of a de facto custodian, including whether the parent now seeking custody was previously prevented from doing so as a result of domestic violence as defined in KRS 403.720 and whether the child was placed with a de facto custodian to allow the parent now seeking custody to seek employment, work, or attend school; and

(k) The likelihood a party will allow the child frequent, meaningful, and continuing contact with the other parent or de facto custodian, except that the court shall not consider this likelihood if there is a finding that the other parent or de facto custodian engaged in domestic violence and abuse, as defined in KRS 403.720, against the party or a child and that a continuing relationship with the other parent will endanger the health or safety of either that party or the child.

Appellant argues that the trial court did not consider the above factors and erroneously held that he did not have adequate family support.

> Trial courts have broad discretion to decide custody and timesharing. In reviewing a decision as to where a child will primarily live, we must give a great deal of deference to both the trial court's findings of fact and discretionary decisions. The trial court is in the best position to resolve the conflicting evidence and make the determination that is in the child's best interest. So long as the trial court properly considers the mandate of KRS 403.270, including giving due consideration to all relevant factors, we will defer to its decision if it is neither clearly erroneous nor an abuse of discretion.

*Barnett v. White*, 584 S.W.3d 755, 759 (Ky. App. 2019) (citations omitted). We find no error here.

This Court has reviewed the testimony of Appellant, Appellee, and the paternal grandparents. We have also reviewed the statements made by the court on the record at the end of the final dissolution hearing and during the hearing on the motions to alter, amend, or vacate. During the statements made on the record at the conclusion of the final dissolution hearing, the trial court specifically went through each and every factor listed in KRS 403.270(2). The trial court found that the factors weighed evenly in favor of the parties, but the court was concerned with Child 1's separation anxiety. The court spoke about the testimony of the child's counselor and how Child 1 was improving. The court was open to reexamining the parenting time issue once Child 1's emotional and mental state had improved. The court was focused on Child 1's well-being, and this was not error.

Also, the written dissolution order stated that Appellant did not have adequate family support. Appellant claims this finding is erroneous. We do not believe it is. After reviewing the testimony and statements made by the trial court, it is clear that the court was indicating that the paternal grandparents do not live locally. The paternal grandfather lives over an hour away from Appellant, and the paternal grandmother lives about 45 minutes away from Appellant. The maternal grandparents, on the other hand, live locally and are more geographically close to Appellee. Appellant and the paternal grandparents all testified that the paternal grandparents love the children and would help out when needed; however, the trial

court was concerned that they did not live closer to Appellant in order to be more available to help with the children.

We believe the trial court properly chose not to award equal parenting time to Appellant. The trial court was extremely concerned with Child 1's separation anxiety. That, along with Appellant not having local family members available to help with the children, were appropriate factors to consider. The trial court is not limited to considering only the eleven factors listed in KRS 403.270(2). *Barnett*, 584 S.W.3d at 760.

Appellant's next argument on appeal is that the trial court erred in finding that Appellee's professional degree was not marital property. Appellant claims that because Appellee obtained her professional degree during the marriage, it should be considered marital property. Also, Appellant claims the court failed to take into consideration Appellee's professional degree when determining maintenance and property distribution.

Appellant is incorrect that a professional degree can be marital property. Kentucky law is clear that it is not, and such a degree cannot be divided upon divorce. *Inman v. Inman*, 648 S.W.2d 847, 852 (Ky. 1982); *Schmitz v. Schmitz*, 801 S.W.2d 333, 335 (Ky. App. 1990); *McGowan v. McGowan*, 663 S.W.2d 219, 223 (Ky. App. 1983). *Schmitz* and *McGowan* do hold that a court may consider one spouse's contribution to the other spouse obtaining a

professional degree when determining maintenance and property distribution.

*Schmitz*, 801 S.W.2d at 336; *McGowan*, 663 S.W.2d at 223.

Appellant argues that the trial court did not consider his contribution to the family while Appellee was obtaining her professional degree and did not consider Appellee's increased earnings when determining maintenance and property distribution. The trial court awarded no maintenance and an equal property distribution.

> (1) In a proceeding for dissolution of the marriage or for legal separation, or in a proceeding for disposition of property following dissolution of the marriage by a court which lacked personal jurisdiction over the absent spouse or lacked jurisdiction to dispose of the property, the court shall assign each spouse's property to him. It also shall divide the marital property without regard to marital misconduct in just proportions considering all relevant factors including:
>
> (a) Contribution of each spouse to acquisition of the marital property, including contribution of a spouse as homemaker;
>
> (b) Value of the property set apart to each spouse;
>
> (c) Duration of the marriage; and
>
> (d) Economic circumstances of each spouse when the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children.

KRS 403.190.

-10-

(1) In a proceeding for dissolution of marriage or legal separation, or a proceeding for maintenance following dissolution of a marriage by a court which lacked personal jurisdiction over the absent spouse, the court may grant a maintenance order for either spouse only if it finds that the spouse seeking maintenance:

(a) Lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs; and

(b) Is unable to support himself through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home.

(2) The maintenance order shall be in such amounts and for such periods of time as the court deems just, and after considering all relevant factors including:

(a) The financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;

(b) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;

(c) The standard of living established during the marriage;

(d) The duration of the marriage;

(e) The age, and the physical and emotional condition of the spouse seeking maintenance; and

(f) The ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance.

KRS 403.200. We review maintenance and property distribution awards for abuse of discretion. *McGregor v. McGregor*, 334 S.W.3d 113, 118-19 (Ky. App. 2011).

We will first address the property distribution issue. As previously stated, the trial court split the marital property equally between the parties. The marital home was to be sold and the proceeds split between the parties after all home-related debts were paid. Each party also received a similarly valued vehicle. As for their retirement accounts, Appellee's retirement account had a significant amount more than that of Appellant; therefore, the trial court allowed Appellant to keep his retirement account and gave Appellant a portion of the funds in Appellee's account. Adding the amount of money in Appellant's retirement account to the money he received from Appellee's account equals the amount Appellee was allowed to keep in her account. In addition, the personal property was split evenly, and each party was responsible for the debt solely in his or her name. We believe this was a just division, and the trial court did not abuse its discretion. The parties did not live extravagantly and did not have a plethora of marital property. Additionally, Appellant received a significant amount of money from Appellee's retirement account. There was no error here.

As to maintenance, the court stated in its order that it considered the factors listed in KRS 403.200. In addition, the court found that the parties lived in a modest house with a sizeable amount of debt associated with it. Furthermore, the court found that there was no testimony regarding a lavish lifestyle or an extravagant standard of living that would warrant maintenance. During the court's oral statements at the conclusion of the dissolution hearing, the court also considered that the parties did not have much money "in the bank" and that both parties have always worked. Finally, the court ordered that Appellee was to be solely responsible for the mortgage payments until the marital home was sold. The court suggested that this was in lieu of maintenance and because Appellee had the greater income. We believe the trial court considered the financial situation of each party and did not abuse its discretion in declining to award maintenance.

We now move on to Appellant's final argument regarding attorney fees. Appellant argues that the trial court erred in only awarding him $5,000 in attorney fees, as opposed to the $15,000 he requested. Appellant argues that the trial court failed to consider the income disparity between the parties when awarding attorney fees. We review issues of attorney fees for abuse of discretion. *Miller v. McGinty*, 234 S.W.3d 371, 373 (Ky. App. 2007).

> The court from time to time after considering the
> financial resources of both parties may order a party to
> pay a reasonable amount for the cost to the other party of
> maintaining or defending any proceeding under this

chapter and for attorney's fees, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding or after entry of judgment. The court may order that the amount be paid directly to the attorney, who may enforce the order in his name.

KRS 403.220.

We find no error as to the award of attorney fees. When the court made its oral findings at the end of the dissolution hearing, the court stated that the only factor it could consider when determining attorney fees is the difference in the income of the parties. It is clear to us that the court did consider Appellee's larger income when it awarded $5,000 in attorney fees. There was no abuse of discretion.

## **CONCLUSION**

Based on the foregoing, we affirm the judgment of the Leslie Circuit Court.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Leonard H. Brashear
Hyden, Kentucky

BRIEF FOR APPELLEE:

Kenneth A. Buckle
Hyden, Kentucky