RENDERED: JULY 16, 2021; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0295-MR

JULIUS J. PAOLI, III                                                      APPELLANT

APPEAL FROM MARION CIRCUIT COURT
v.       HONORABLE ALLAN RAY BERTRAM, JUDGE
ACTION NO. 17-CI-00253

TERESA W. PAOLI                                                           APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CALDWELL, JONES, AND TAYLOR, JUDGES.

TAYLOR, JUDGE: Julius J. Paoli, III, brings this appeal from a Property Division

Order of the Marion Circuit Court entered on October 23, 2019.[1] We affirm.

Julius J. Paoli, III, and Teresa W. Paoli were married December 27,

1980, in Lebanon, Marion County, Kentucky. After their marriage, the parties

---

[1] By order entered February 20, 2020, the Marion Circuit Court denied Julius J. Paoli, III's, motion to alter, amend, or vacate the October 23, 2019, Property Division Order. A decree dissolving the marriage was also entered on October 23, 2019, which is not at issue in this appeal.

relocated to Pennsylvania. Upon moving to Pennsylvania, for approximately eight years, Teresa worked with Julius training thoroughbred horses. After the parties' first child was born in 1988, Teresa became a stay-at-home mother; their second child was born in 1990. Teresa subsequently homeschooled the parties' two children from preschool through high school. After the children's education was completed, Teresa worked part-time outside the home. Teresa initially worked as a pre-school aide and then as a physical therapy assistant.[2] Throughout the marriage, Julius worked outside the home.

On June 28, 2017, the parties separated, and Teresa moved back to Marion County, Kentucky. Julius remained in the parties' marital residence in Pennsylvania. Teresa filed a Verified Petition for Dissolution of Marriage on December 1, 2017. Julius responded with a motion to dismiss the petition as it was filed before Teresa had resided in Kentucky for the requisite six-month period. Teresa subsequently filed an Amended Verified Petition for Dissolution of Marriage on January 19, 2018.

An evidentiary hearing was conducted by the circuit court on March 4, 2019. Teresa and Julius were the only witnesses to testify. Following the hearing, the parties submitted briefs setting forth their respective positions

---

[2] Teresa W. Paoli was unable to continue working due to back pain and was subsequently determined to be permanently disabled as of December 1, 2018.

regarding the unresolved property issues.  A Decree of Dissolution of Marriage and a Property Division Order were simultaneously entered on October 23, 2019.  The Property Division Order restored each parties' nonmarital property, divided the parties' marital property, and denied Teresa's request for spousal maintenance. Julius filed a timely motion to alter, amend, or vacate the October 23, 2019, Property Division Order.  An order was entered February 20, 2020, denying Julius's motion to alter, amend, or vacate.  This appeal follows.

We begin our analysis by noting that an evidentiary hearing was conducted by the circuit court in adjudicating the contested issues in this divorce proceeding.[3]  Accordingly, our review of the circuit court's findings of fact will proceed pursuant to Kentucky Rules of Civil Procedure (CR) 52.01, which provides that "[f]indings of fact, shall not be set aside unless clearly erroneous[.]" A finding of fact is not clearly erroneous if supported by substantial evidence.  *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003).  Any questions of law raised on appeal are reviewed *de novo*.  *Allen v. Devine*, 178 S.W.3d 517, 524 (Ky. App. 2005).  If the factual findings are supported by substantial evidence and the correct law was applied by the court below, the court's decision will not be

---

[3] The evidentiary hearing was essentially a bench trial where the case was tried upon the facts without a jury.  This requires the application of Kentucky Rules of Civil Procedure (CR) 52.01 in our review.

disturbed absent an abuse of discretion. *M.C. v. Cabinet for Health and Family Servs.*, 614 S.W.3d 915, 921 (Ky. 2021).

Julius's contentions of error in this appeal focus upon the circuit court's division of the parties' marital property. The division of marital property in a dissolution of marriage proceeding is governed by Kentucky Revised Statutes (KRS) 403.190. Section (1) of KRS 403.190 provides that the circuit court must divide marital property in "just proportions considering all relevant factors" including the contribution each spouse made in acquiring the property, the value of the property each spouse is receiving, the duration of the parties' marriage, and the economic circumstances of each spouse once the property is divided. KRS 403.190(1)(a)-(d); *see McGowan v. McGowan*, 663 S.W.2d 219, 223-24 (Ky. App. 1983). As KRS 403.190 merely requires "considering" all the factors relevant to a just or equitable division of marital property, the circuit court has wide discretion in its decision. *Hempel v. Hempel*, 380 S.W.3d 549, 553 (Ky. App. 2012). And, the circuit court's division of marital property will not be disturbed on appeal absent an abuse of discretion. *Muir v. Muir*, 406 S.W.3d 31, 34 (Ky. App. 2013) (citation omitted).

Julius's first contention of error is that the circuit court erred in its valuation and division of the parties' personal property. In this regard, Julius asserts the circuit court: (1) erred in its valuation of the marital items of personal

property divided among the parties; (2) failed to offset the value of the property Teresa took when the parties separated against Teresa's award of personal property; and (3) erroneously classified a hot tub as personal property.

In the October 23, 2019, Property Division Order, the circuit court assigned values to items of marital personal property remaining in the marital residence after Teresa's departure. The largest value assigned to a single item was the parties' hot tub. The hot tub was apparently located in the garage of the marital residence and the circuit court valued it at $3,000. Julius argued that the hot tub was part of the real estate and not personalty. The other items valued by the court included various pieces of furniture, numerous household items, and miscellaneous tools and lawn care items. Other than two end tables and a coffee table, Julius was awarded all of the remaining personalty including the hot tub. After assigning a value to each of the items, the circuit court then awarded Teresa one-half of the total value of the personal property, or $4,815.

To begin, we note when the parties separated that Teresa had taken personalty from the residence by agreement of the parties. There was no evidence presented regarding the value of this personalty. Thus, any claim for offset for its value against the final property division was not properly preserved below.

Teresa testified she believed the personal property remaining in the marital residence had a total value of between $8,000 to $10,000. Teresa's

testimony was subsequently summarized in her post-trial memorandum and values were assigned to each individual item of personal property. Julius, on the other hand, failed to present any evidence regarding the value of the items of personal property. In fact, Julius only assigned values to the items of personal property in his motion to alter, amend, or vacate the court's October 23, 2019, Property Division Order. At the hearing on the motion to alter, amend, or vacate, there was some discussion among counsel regarding whether Julius intended to sell the marital residence, and if so, whether the hot tub would be sold with the house. Regardless, the only evidence presented regarding the value for the hot tub was a $3,000 value provided by Teresa. There was no evidence to establish that the hot tub had become a fixture to the real estate. Accordingly, upon a thorough review of the record, we believe there was sufficient evidence presented to support the circuit court's valuation and division of the personal property, and we do not believe the court abused its broad discretion in the valuation and division of same.

Julius next specifically contends the circuit court erred in its division of the cash located in the parties' safe-deposit box. There was conflicting evidence presented by the parties regarding the amount of cash Teresa withdrew from the safe-deposit box. Teresa testified there was $10,000 cash in the safe-deposit box and that she took one-half of the funds, or $5,000, and left the other $5,000 for Julius. Julius testified there was no money left in the safe-deposit box and claims

Teresa removed the entire amount. Julius testified a ledger was kept in the safe-deposit box and he produced a photocopy. Julius claimed the photocopy demonstrated that all the cash had been withdrawn from the safe-deposit box. Teresa testified that the notations on the ledger were not authentic as they were not all in her handwriting. Teresa also pointed out that part of the ledger entries on the photocopy had been concealed by a sticky note placed on the ledger before it was copied.

As noted, it is well-settled in Kentucky that when conflicting evidence is presented in an evidentiary hearing conducted without a jury, our review proceeds pursuant to CR 52.01. CR 52.01 specifically provides that in actions tried without a jury, the circuit court has the sole authority to judge the credibility of witnesses. And, "[r]egardless of conflicting evidence . . . 'due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses' because judging the credibility of witnesses and weighing evidence are tasks within the exclusive province of the trial court." *Asente*, 110 S.W.3d at 354 (quoting CR 52.01) (footnotes omitted). As the credibility of the witnesses in a bench trial is within the sole province of the circuit court, we cannot say the court erred by accepting Teresa's testimony that she only removed $5,000 from the safe-deposit box and left $5,000 for Julius.

Julius also asserts the circuit court erred in its division of the parties' 2017 joint income tax refund in the amount of $3,044. Julius contends that an equal division of the 2017 tax refund was in error because the refund was generated solely from income he earned. Julius specifically claims that the equal division of such tax refund was in contravention of KRS 403.190(1)(a), which requires that the court consider the contribution of each spouse in obtaining the asset. Julius essentially argues that because he earned the income, he should get the entire tax refund.

It is well-established that income earned during the parties' marriage is marital property. *Dotson v. Dotson*, 864 S.W.2d 900, 902 (Ky. 1993). And, pursuant to KRS 403.190(1) a circuit court shall divide the parties' marital property "in just proportions considering all relevant factors[.]" And, among the relevant factors is the "[c]ontribution of each spouse to acquisition of the marital property, including contribution of a spouse as homemaker[.]" KRS 403.190(1)(a).

In the case *sub judice*, the circuit court was clearly cognizant that income earned during a marriage is generally marital property. Therefore, Julius's assertion that he is entitled to the entire tax refund because he earned the income is without merit. The circuit court obviously considered the contribution of Teresa as

a homemaker spouse and of Julius as the wage earner. As such, we do not believe the circuit court erred in its equal division of the parties' 2017 income tax refund.

Julius's next contention is that the circuit court erred in its equal division of Julius's retirement accounts. Again, Julius's assertion is based upon the fact that the retirement accounts, which totaled approximately $400,000, were funded solely by income he earned during the marriage.

The same basic analysis applies here as set forth above regarding division of the parties' 2017 joint income tax refund. The fact that Julius worked outside the home and generated the income to fund the retirement accounts is not dispositive of the issue. It is well-established that retirement benefits are subject to division as marital property to the extent they were accumulated during the marriage. *Tager v. Tager*, 588 S.W.3d 183, 185 (Ky. App. 2019) (citation omitted). And, pursuant to KRS 403.190(1), the circuit court must divide marital property in just proportions while considering all relevant factors including the contribution each spouse made in acquiring the property, the value of the property each spouse is receiving, the duration of the parties' marriage, and the economic circumstances of each spouse once the property is divided. KRS 403.190(1)(a)-(d).

In this case, the circuit court properly considered Teresa's contribution as the homemaker spouse, the duration of the almost 39-year marriage, and

Teresa's economic circumstances, including her being disabled. *See* KRS 403.190(1); *see McGowan*, 663 S.W.2d at 223-24. Teresa's only income was $223 per month in social security disability payments and $305 per month in SSI benefits. The court denied Teresa's request for maintenance, which is not an issue in this appeal. The court declined to award maintenance in part based on the equitable division of assets, including the retirement accounts. We find no legal error in this division and, thus, do not believe the circuit court abused its discretion in the equal division of the retirement accounts between the parties.

Julius's final argument on appeal is that the circuit court erred in awarding Teresa one-half of the equity in the marital residence. The basis for Julius's assertion is that despite being the sole wage earner during much of the marriage, Teresa was awarded one-half of the retirement accounts; thus, Julius believes he is entitled to more than an equal division of the equity in the marital residence.

In this case, there was conflicting testimony regarding the value of the marital residence. Neither party introduced an appraisal of the residence at the evidentiary hearing. Julius acknowledged that the residence had been previously appraised for $220,000; however, he opined that without needed repairs it only had a value of $200,000. Julius testified that cost of necessary repairs would be $59,203, but acknowledged some of those repairs had since been performed. The

Property Valuation Administrator (PVA) assessed the value of the residence as $211,432. As of March 1, 2018, the balance on the parties' mortgage was $129,063.67. The circuit court ultimately utilized the PVA value, then subtracted the outstanding mortgage, and calculated the parties' equity in the marital residence as $82,368.33. The circuit court ordered Julius to pay Teresa one-half of the equity in the marital residence, or $41,184.17, if he elected to remain in the marital residence. However, if Julius elected to sell the marital residence, the court then ordered the parties to divide the net proceeds equally. We do not believe that an equal division of the equity in the marital residence was in error. If Julius was dissatisfied with the court's determination of the equity, he could have opted for the circuit court's second option, which was to sell the marital residence and equally divide the proceeds with Teresa. The court did not abuse its discretion on this issue.

We further note that Julius argues the cumulative effect of the alleged erroneous decisions by the court in the division of marital property is unjust and otherwise fails to divide the property in just proportions as required by KRS 403.190. Having concluded that the court's rulings were not in error, this argument must also fail.

For the foregoing reasons, the October 23, 2019, Property Division Order of the Marion Circuit Court is affirmed.

ALL CONCUR.

BRIEFS AND ORAL ARGUMENT  BRIEF AND ORAL ARGUMENT
FOR APPELLANT:      FOR APPELLEE:

Jonathan R. Spalding      Dawn L. McCauley
Lebanon, Kentucky       Lebanon, Kentucky