**Leland Clair CASPER, Appellant,**

v.

**Omega Thompkins CASPER, Appellee.**

Court of Appeals of Kentucky.

March 1, 1974.

As Modified on Denial of Rehearing
May 10, 1974.

W. Pelham McMurry, McMurry & Livingston, Paducah, for appellant.

Joseph S. Freeland, Paducah, for appellee.

PALMORE, Justice.

This is a divorce case practiced under KRS 403.110 et seq., the 1972 "no-fault" divorce law (c. 182, Acts of 1972). Only the husband appeals. The principal question concerns the meaning of the words, "unable to support himself through appropriate employment," as used in subsection (1)(b) of KRS 403.200, the maintenance statute. A subsidiary question is whether the amount of maintenance directed by the judgment is reasonable.

The parties married in 1946 and separated in 1967. Although the complaint was filed in 1969, the evidence was not taken until 1972 and judgment was entered in 1973. At the beginning, he was a truck

driver and she worked as a beautician. They had no property, but eventually he secured employment as a Greyhound bus driver, she discontinued her separate employment, and they were able to accumulate a respectable marital estate which (as divided by the judgment) amounted to the following when they separated in 1967:

| Item | To Wife | To Husband | |
|---|---|---|---|
| 1964 Mobile home and contents | $ 6,000. | | |
| 1964 Oldsmobile automobile | 1,800. | | |
| Savings account | 6,130.* | | |
| Checking account | 2,000.* | | |
| 1967 Ford automobile | | $ 3,000. | |
| Credit union savings account | | 6,000. | |
| Coin collection | | 700. | |
| Fishing boat | | 550. | |
| Stock | | 730. | |
| Motor bike | | 225. | |
| Totals | 15,930 | 11,205 | $27,135 |

* These sums were converted by the wife to her own account when the separation took place.

At the time of the divorce both parties were approximately 50 years of age. They had no children. He was earning $12,000 to $14,000 per annum with Greyhound. She had done some refresher work at a business school and was earning $2.05 per hour as a clerk-typist at a hospital in Paducah. During the separation of some five years between 1967 and the taking of testimony in 1972 she had continued to live (by herself) in the mobile home, and the changes that had taken place with respect to the accumulated money and property were substantially as follows:

1. Over a period of 18 months during the earlier years of the separation the husband had voluntarily contributed $3400 in cash to the wife which, with another $80 later paid, constituted the total maintenance payments made at any time between 1967 and the date of the judgment.

2. On February 28, 1972, the wife's savings account ($6130 in 1967) had dwindled to $4033. She was not asked what had become of the $2,000 she had drawn from the checking account in 1967. She still had the 1964-model automobile.

3. The husband had sold the fishing boat and motorbike, had traded the 1967-model Ford in on a 1970-model car of the same make, had purchased a motorboat for $9,000 and a pick-up truck for $3500, and had invested $5000 in an eight-room home. His savings with the credit union had increased to $8900, in addition to which he had $100 in one bank and $115 in another. His indebtedness on the truck and boat totalled $8300, for which the monthly installments were $292.40, and he owed $28,875 on the house.

Essentially, in dividing the marital estate the judgment left the respective parties with what each of them had taken or kept in 1967. In addition, the husband was directed to pay the wife maintenance at the rate of $125 per month for 10 years, subject to termination in event of the death of either or the wife's remarriage. The allowance for maintenance was based on findings of fact that the wife was presently employed as a clerk-typist at $2.05 per hour for a 40-hour week, that the husband was earning about $14,000 per annum with Greyhound, and that:

"Neither party is incapable of self-support through appropriate employment, but petitioner because of her low earning capacity cannot adequately provide for her reasonable needs at the present time."

The husband's main contention is that in view of this last finding, and since the wife had managed to support herself during most of the period of the separation, the award of maintenance was wholly unauthorized. This position overlooks the fact that besides the $3480 received from the husband she had consumed some $2100 of the cash on hand at the beginning of the separation and apparently was not making any provision for replacement of the old automobile or for upkeep of the mobile home. Be that as it may, however, the real issue here is whether the criterion

provided by KRS 403.200(1)(b) is absolute or relative, and we think the answer must be that it is relative.

It is to be noted that once the conditions of KRS 403.200(1) are satisfied, KRS 403.200(2) specifies a number of relative factors to be considered in determining the amount of maintenance, including the "standard of living established during the marriage." The statute, as did the law before, simply recognizes that what might be ample for a scullery maid is not necessarily sufficient for one accustomed to the lifestyle of a duchess, and it seems to us that the same is true with respect to what is "support."

■ In this respect we think a proper construction of KRS 403.200(1) is that maintenance may be awarded only after a finding that the spouse seeking maintenance (a) lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs; and (b) is unable to support himself through appropriate employment according to the standard of living established during the marriage.

To illustrate, suppose that under the circumstances of a given case a trial court should determine that the proper amount of maintenance to be paid a divorced spouse with no earning capacity whatever and with no other means of support is $200 per week. Under the appellant's theory, if that same person could earn $82 per week he or she would not be entitled to any maintenance. We cannot believe the law intended the anomaly that one who cannot work at all may have the benefit of a better standard of living than one who is able to eke out the bare necessities of life.

■ It is our conclusion that maintenance was authorized in this case. We recognize that on the basis of the situation existing in 1967 the wife was given more than the husband in the division of the marital estate, but that can affect the question of maintenance only to the extent of its net influence upon the relative resources of the parties today. Cf. KRS 403.200(2)(a) and (f).

The award of $125 per month for 10 years can be set aside as excessive only if we hold it clearly erroneous. CR 52.01. The record leaves no doubt that it is a reasonable amount and well within the husband's ability to pay but for his debts on the truck, motorboat and home. In view of his savings there is no reason he cannot liquidate the debt on the boat and truck. The evidence does not disclose what payments will be required on the house, but should they prove too burdensome he can liquidate that investment. We find ourselves unable to say that the chancellor's judgment in the matter was clearly erroneous.

The judgment is affirmed.

All concur.