RENDERED:  DECEMBER 22, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-1335-MR

MARK ALLEN PETERSON                                        APPELLANT

v.
APPEAL FROM MASON CIRCUIT COURT
HONORABLE STOCKTON B. WOOD, JUDGE
ACTION NO. 20-CI-00104

STEPHANIE MARIE PETERSON                                   APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CLAYTON, CHIEF JUDGE; JONES AND L. THOMPSON, JUDGES.

CLAYTON, CHIEF JUDGE:  Mark Allen Peterson ("Mark") appeals from the

Mason Circuit Court's maintenance award in his dissolution of marriage action.

Finding no error, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Mark and Stephanie Marie Peterson ("Stephanie") married on April

28, 2012, and separated in April 2020, with Stephanie moving out of the marital

home in October 2020.  Stephanie petitioned the circuit court for a dissolution of marriage on June 24, 2020.  The parties ultimately entered into a separation agreement dividing all assets and debts but reserving the issue of maintenance (the "Separation Agreement").

Under the Separation Agreement, Stephanie received a 2011 Ford Explorer valued at $6,000 and with no debt; approximately $10,000 in personal property; $20,540 for her one-half of the marital equity in the parties' home; her retirement accounts of approximately $6,800; a one-half interest in Mark's 401(k), which interest was valued at $5,572.50; and a one-half interest in Mark's employee stock option program less the offset by Stephanie's retirement accounts, which interest at the time of the hearing was valued at approximately $78,013.

Stephanie sought maintenance of $1,500 per month for three (3) years. The Domestic Relations Commissioner ("DRC") conducted a contested evidentiary hearing on the issue of maintenance on June 21, 2021.  In the DRC's report filed on July 6, 2021, the DRC found that throughout the marriage, Stephanie had made approximately $23,000 per year, and her net monthly employment income was $1,638.92.  The DRC found that Mark made approximately $82,000 per year, and his net monthly employment income was approximately $4,994.90.

The DRC found that Stephanie had an associate degree in bookkeeping and accounting but was currently working as a bank teller. Mark's testimony at the DRC hearing was that Stephanie did not want to work in accounting or bookkeeping because she was uncomfortable handling other people's finances. Stephanie testified that she would like to pursue a bachelor's degree at Maysville Community and Technical College but that she had yet to take any steps to determine the cost or time involved.

In addition to her employment income, the DRC found that Stephanie had a child support order in another state for her two minor children of $407 per month, which she received every third month, as Iowa entertains motions for contempt for child support that is three (3) months behind. Moreover, Stephanie received Supplemental Nutrition Assistance Program ("SNAP") benefits of $700 per month and had no health insurance costs for her or her children. She also received a $2,774 tax refund in 2020, which added $219.67 per month to her income. Moreover, beginning in July 2021, the DRC noted that Stephanie would receive $600 per month until December 2021 from the COVID-19 relief package.

The DRC determined that Stephanie's monthly expenses were $1,681.95, exceeding her net monthly employment income by $43.03. However, the DCR determined that Stephanie had extra monthly income from various other

sources that would enable her to cover the shortfall. Thus, the DCR determined that Stephanie had sufficient monies to cover her monthly expenses.

The DRC determined that Mark's monthly expenses totaled $4,724.90 and noted that Mark had testified that he could not meet his needs and also pay maintenance to Stephanie. Accordingly, based on the preceding findings, the DRC recommended that the circuit court deny Stephanie's motion for maintenance.

The circuit court entered an order on November 10, 2021, modifying certain portions of the DRC's findings of fact and determining that Stephanie should be awarded maintenance for a short duration to allow her to upgrade her experience in bookkeeping and accounting. Thus, the circuit court awarded Stephanie $500 per month in maintenance for two (2) years to allow Stephanie to pursue additional education and seek better employment.

Thereafter, Mark filed a motion to alter, amend, or vacate, arguing that the circuit court had not followed the requirements of Kentucky Revised Statutes ("KRS") 403.200 and had failed to make findings of fact as to Stephanie's entitlement to maintenance or to support its conclusion that Stephanie was entitled to the maintenance which it awarded.

The circuit court subsequently entered an order expanding on its findings of fact and conclusions of law but did not ultimately change its maintenance order. This appeal followed.

We will discuss further facts as they become relevant.

## ANALYSIS

### a. Standard of Review

As discussed by a separate panel of this Court, "[t]he determination of questions regarding maintenance is a matter which has traditionally been delegated to the sound and broad discretion of the trial court[.]" *Barbarine v. Barbarine*, 925 S.W.2d 831, 832 (Ky. App. 1996) (citations omitted). Only when the circuit court has "abused its discretion or based its decision on findings of fact that are clearly erroneous" may we disturb the circuit court's decision. *Powell v. Powell*, 107 S.W.3d 222, 224 (Ky. 2003) (citation omitted).

A circuit court abuses its discretion when its decision is "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Artrip v. Noe*, 311 S.W.3d 229, 232 (Ky. 2010) (citation omitted). Additionally, findings of fact supported by substantial evidence are not erroneous. *Barbarine*, 925 S.W.2d at 832 (citations omitted). "[S]ubstantial evidence is evidence that a reasonable mind would accept as adequate to support a conclusion and evidence that, when taken alone or in the light of all the evidence, . . . has sufficient probative value to induce conviction in the minds of reasonable men." *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003) (internal quotation marks and footnotes omitted). Stated another way, findings of fact are clearly erroneous if the circuit court's findings are

"clearly contrary to the weight of evidence." *Clark v. Clark*, 782 S.W.2d 56, 58 (Ky. App. 1990) (citations omitted).

### b. Discussion

Mark argues that the circuit court's findings of fact were clearly erroneous and unsupported by substantial evidence and that the circuit court abused its discretion in awarding Stephanie maintenance. Before a circuit court may award maintenance, it must first find that the spouse seeking maintenance "[l]acks sufficient property, including marital property apportioned to him, to provide for his reasonable needs[.]" KRS 403.200(1)(a). Secondly, the spouse seeking maintenance must be "unable to support himself through appropriate employment[.]" KRS 403.200(1)(b). If either factor is not met, the circuit court may not award maintenance. *Drake v. Drake*, 721 S.W.2d 728, 730 (Ky. App. 1986).

Additionally, Kentucky courts have determined that the "appropriate employment" component discussed in KRS 403.200(1)(b) is based on "the standard of living established during the marriage." *Drake*, 721 S.W.2d at 730 (citation omitted); *see also Lovett v. Lovett*, 688 S.W.2d 329, 334 (Ky. 1985), and *Casper v. Casper*, 510 S.W.2d 253, 255 (Ky. 1974).

In this case, under KRS 403.200(1)(a), the circuit court found that Stephanie lacked significant property to support herself. Specifically, the circuit

court noted that she received half of the couple's furniture, a vehicle, half of Mark's 401(k) – which Stephanie could not withdraw without penalty for quite some time – and a portion of her equity interest in the marital home, or $20,540. The record supports these findings, and we do not find them to be clearly erroneous.

Additionally, we do not find that the circuit court abused its discretion in determining that such property was not significant enough to support Stephanie. Appellate courts will not uphold a circuit court's maintenance determination that is arbitrary or unsupported by sound legal principles. *Naramore v. Naramore*, 611 S.W.3d 281, 286 (Ky. App. 2020). A circuit court's failure to properly apply the factual findings to the maintenance statute, or to consider relevant portions of the statute altogether, is an abuse of discretion. *See Inman v. Inman*, 578 S.W.2d 266, 270 (Ky. App. 1979). In this case, Stephanie would be relying almost entirely on her earnings as a bank teller to support herself and her two children.

As to the second factor contained in KRS 403.200(1)(b), in this case, the circuit court found that the couple had established a comfortable standard of living during the marriage, as the couple had a substantial joint income during the marriage, little debt outside of their vehicles and mortgage, and the marital home was valued at $295,000. Further, the circuit court found that the standard of living established during the marriage included the ability to save for retirement and that

Stephanie's current earning capacity would cause a drastic reduction in the lifestyle established during the marriage. We can deduce no clear error in these findings.

Additionally, the circuit court did not abuse its discretion in determining that Stephanie could not support herself through appropriate employment "*according to the standard of living established during the marriage*." *McGowan v. McGowan*, 663 S.W.2d 219, 224 (Ky. App. 1983) (emphasis added). As previously discussed, the circuit court found the couple's standard of living to be comfortable during the marriage and included the ability to save for retirement to be a part of the standard of living the couple maintained throughout the marriage. Thus, because the circuit court believed that Stephanie needed further training or education to be self-sufficient, to not be on government benefits, and to save for her retirement, she was entitled to an additional amount which, coupled with her reasonable earnings, permitted her to obtain the necessary education to upgrade her degree.

There is substantial evidence in the record to support the circuit court's finding that Stephanie's salary as a bank teller, even when combined with her portion of the marital assets, was not appropriate to provide for her according to the standard of living established during the couple's marriage. *McGowan*, 663 S.W.2d at 224; *see also Casper*, 510 S.W.2d at 255. Indeed, maintenance is designed "to facilitate one's transition from dependence upon [a] former spouse to

-8-

independence." *Shafizadeh v. Shafizadeh*, 444 S.W.3d 437, 448 (Ky. App. 2012) (internal quotation marks and citation omitted). As stated by the Kentucky Supreme Court, "403.200 seeks to enable the unemployable spouse to acquire the skills necessary to support himself or herself in the current workforce so that he or she does not rely upon the maintenance of the working spouse indefinitely." *Powell*, 107 S.W.3d at 224.

Considering the nonmarital and marital property assigned to Stephanie, her annual income, and the standard of living established by the parties during their marriage, we find no abuse of discretion by the circuit court in awarding maintenance to Stephanie.

Mark further argues that the circuit court abused its discretion in determining the amount and duration of the maintenance award. In determining the amount and duration of the maintenance, we turn to KRS 403.200(2)(a)-(f). Specifically, a circuit court is required to consider certain factors, including:

> (a) The financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently, . . . ;
>
> (b) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;
>
> (c) The standard of living established during the marriage;
>
> (d) The duration of the marriage;

-9-

(e) The age, and the physical and emotional condition of the spouse seeking maintenance; and

(f) The ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance.

In this case, as previously discussed, the circuit court determined that, based on Stephanie's financial resources, she would need short-term maintenance from Mark to meet her needs independently. KRS 403.200(a). Additionally, the circuit court determined that two years of maintenance would provide Stephanie with "[t]he time necessary to acquire sufficient education or training to enable" her to find appropriate employment. KRS 403.200(2)(b). We have already discussed the comfortable standard of living established during the nine-year marriage. KRS 403.200(2)(c) and (d). Moreover, the circuit court discussed that Stephanie was relatively young and would greatly benefit from increased training or education to find a more appropriate job. KRS 403.200(2)(e). Finally, the circuit court found that Mark could meet his needs while paying Stephanie maintenance. KRS 403.200(2)(f). The circuit court noted that, although the DRC found that Mark did not have excess income to pay maintenance, the circuit court reduced Mark's monthly expenses to $4,098.71 by reducing Mark's monthly grocery and eating out expenses. Based on his income of approximately $4,994.90 gross per month, the circuit court found that Mark had the available funds to provide Stephanie with the

-10-

maintenance payments.  In this case, we see no abuse of discretion regarding the duration or amount of the maintenance award.

Mark's final argument is moot, as we have determined that the circuit court's award, in this case, is appropriate in all respects.

## **CONCLUSION**

For the foregoing reasons, we affirm the Mason Circuit Court.

ALL CONCUR.

| BRIEF FOR APPELLANT: | BRIEF FOR APPELLEE: |
|---|---|
| Rebekah J. Rice | Jeffrey L. Schumacher |
| Maysville, Kentucky | Maysville, Kentucky |