RENDERED: JUNE 21, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0228-MR

JOHN BASIL MATTINGLY                                                    APPELLANT

v.
APPEAL FROM MASON CIRCUIT COURT
HONORABLE HEATHER FRYMAN, SPECIAL JUDGE
ACTION NO. 19-CI-00126

LUANNE KILGUS MATTINGLY                                              APPELLEE

OPINION
AFFIRMING IN PART, REVERSING IN PART,
AND REMANDING

** ** ** ** **

BEFORE: CALDWELL, ECKERLE, AND McNEILL, JUDGES.

CALDWELL, JUDGE: John Basil Mattingly ("Bas") appeals from the award of

$2,500 per month in permanent maintenance to his ex-spouse, Luanne Kilgus

Mattingly ("Luanne"). We affirm in part, reverse in part, and remand with

directions to enter an order reducing maintenance to an amount not to exceed the

reasonable needs of Luanne as found by the trial court.

# FACTS

Bas and Luanne were married for over thirty years and have three adult children. Both were in their late sixties at the time of their divorce. They signed a settlement agreement about the division of marital assets and the restoration of non-marital property, which was incorporated into the divorce decree. But the trial court reserved the issue of maintenance to determine later.

During the marriage, Bas had gone from selling cable to starting his own satellite television business called PrimeStar. He eventually sold PrimeStar at a large profit and went on to start several other businesses. He and Luanne also obtained large ownership percentages of lucrative hotels during their marriage.

The parties' income increased greatly during the marriage. They came to enjoy a lavish lifestyle with a large home, a condominium in Florida, nice vacations including cruises, country club memberships, and a private school education for their children. The parties sold their hotel interests around the time of their divorce. Bas continues to be involved with several business ventures.

Luanne has a college degree. She worked full-time prior to the marriage and during the early years of the marriage – including running her family's drug store. She earned money working part-time for the first few years after her first child was born selling items such as Tupperware and a seasonal children's clothing line.

As Bas's business income grew and with Bas's implicit agreement, Luanne set aside her career to focus on raising the children. By the time of the divorce, Luanne had not held a job for pay for about thirty years. However, she oversaw the maintenance of real property she owned, including rental properties.

Although Bas does not apparently dispute that Luanne is unable to return to regular employment, he contends Luanne has sufficient assets and income to provide for her reasonable needs. According to the marital settlement agreement, Luanne received the marital home, the Florida condominium, and stocks and investment accounts as her share of marital property. She also had non-marital property including inherited real estate consisting of a rental house, a building with one or more rental apartments, and a large, old warehouse suitable for storage. At the time of the maintenance hearing, a relative of Luanne's had recently died and left Luanne three-quarters of her five-million-dollar estate. (After taxes and attorney fees, Luanne was expected to receive a couple of million dollars from the estate.)

Bas contends that he does not have sufficient assets and/or income both to provide for himself and pay Luanne maintenance. He claims the businesses and notes receivable he received under the settlement agreement produce little to no income and that he largely subsists on his social security income.

After hearing evidence from both parties in late 2022, in January 2023 the trial court entered a written order awarding Luanne permanent maintenance of $2,500 per month. The trial court found that Luanne was not able to support herself through appropriate employment and lacked sufficient assets to provide for her reasonable needs.

The trial court noted that Luanne had millions of dollars' worth of real estate, cash, stocks, bonds, and other investments according to the settlement agreement. It found that Luanne required almost $16,000 a month, or around $191,000 a year, for her reasonable needs, noting the lavish lifestyle achieved in the marriage. The trial court noted it excluded some large one-time expenditures, such as legal fees and property repairs, in calculating Luanne's reasonable monthly expenses. Its calculation of Luanne's reasonable monthly expenses was a few hundred dollars less than Luanne claimed.

The trial court also found Luanne had rental income of about $18,000 a year from the properties she owned. The trial court found Luanne could invest about $2.7 million and, assuming a 6 percent rate of return, Luanne could receive about $166,000 in investment income per year. It calculated that Luanne had a shortfall of $7,461.24 per year based on the difference between her projected total income and her monthly expenses.

The trial court also made detailed findings about Bas's finances – noting he retained assets of a couple of million dollars' worth of real estate and accounts receivable and interests in several businesses of unknown value, and also noted he would soon receive half of the proceeds of the sale of real property valued at about $475,000. The trial court also found he had income of about $400,000 in 2019 and about $3 million in 2021 – including payments from a business in 2019 and loan forgiveness payments and capital gains in 2021. It also found Bas claimed a loss of over $600,000 in 2020.

The trial court noted one of Bas's businesses paid him almost $120,000 in benefits in 2021, but the business claimed a $100,000 loss from "shyster loans" that was passed through to Bas. The trial court noted the loss would probably be addressed in bankruptcy later. The trial court also noted that the business's records indicated it paid Bas less than $1,500 in the early months of 2022 and nothing in the latter months of 2022. Further findings observed that Bas claimed to be subsisting only on about $3,000 a month from Social Security in 2022.

The trial court found Bas's testimony about subsisting on Social Security not credible. It found he was receiving other income, not just Social Security, based on financial documents including bank account records. The trial court also found that Bas was making large Zelle transfers to third parties on a

-5-

regular basis – consistent with suspicions expressed in Luanne's testimony that Bas spent about $3,000 a month to support a paramour.

Ultimately, the trial court determined that Bas was "able to help Luanne to overcome her anticipated budgetary shortfall and allow her to enjoy a few luxuries" after stating: "it is very hard to argue that one can support one's paramour but cannot support the woman that has devoted her life to you and is the mother of your children." It ordered Bas to pay Luanne permanent maintenance of $2,500 per month.

Bas filed a motion to alter, amend, or vacate.[1] Before the trial court ruled on this motion, Bas filed a notice of appeal from the trial court's permanent maintenance order. Citing RAP[2] 3(E)(2)-(5), this Court entered an order placing the appeal in abeyance for 60 days to allow the trial court to rule on the motion to alter, amend, or vacate.

---

[1] Luanne raised issues about the timeliness of Bas's motion to alter, amend, or vacate in her response to that motion and in her appellee brief. The motion to alter, amend, or vacate was filed in the trial court on February 6, 2023 – over 10 days after the trial court entered its permanent maintenance order on January 24, 2023. However, the certificate of service on the motion to alter, amend, or vacate indicated it was mailed to the trial court and opposing counsel on February 4, 2023 – also more than 10 days after entry of the maintenance order. *See* Kentucky Rules of Civil Procedure (CR) 59.05 ("A motion to alter or amend a judgment, or to vacate a judgment and enter a new one, shall be served not later than 10 days after entry of the final judgment."). Nonetheless, despite the apparent untimeliness of the motion, the trial court later ruled on the motion – presumably after reviewing the written motion and response filed by the parties.

[2] Kentucky Rules of Appellate Procedure.

The parties then tendered an agreed order to the trial court which would summarily deny the motion to alter, amend, or vacate. The trial court declined to enter the agreed order tendered by the parties. However, the trial court entered an order denying the motion to alter, amend, or vacate and clarifying its rulings from its January 2023 permanent maintenance award. The appeal then returned to this Court's active docket.

Bas claims on appeal that the trial court generally erred in concluding that Luanne lacked sufficient assets and/or income to meet her reasonable needs. He also asserts more specific errors in the trial court's calculations and reasoning in awarding maintenance. Luanne did not file a cross-appeal. She asserts in her appellee brief that Bas failed to include proper preservation statements for each issue argued on appeal and/or failed to preserve various issues for appeal.

## ANALYSIS

### Preservation of Issues

Before we address the merits of specific issues Bas raises on appeal, we consider Luanne's arguments about lack of proper preservation. RAP 32(A)(4) requires that an appellant brief: "shall contain at the beginning of the argument a statement with reference to the record showing whether the issue was properly preserved for review and, if so, in what manner."

Bas's appellant brief contains six separate sub-arguments. Five of the six sub-arguments begin with the same statement:

> This issue was preserved as the only issue heard by the Court was whether or not maintenance should be granted. Mr. Mattingly stated Luanne's income from her assets and other income could meet her expenses. (V.R. 11/30/22; 10:31:20).

(Appellant brief, pp. 11, 12, 13, 15, 17).

Somewhat similarly, the last sub-argument begins with a statement that the sole reason for the hearing was Luanne's request for "alimony" and Bas's objection to this request. And the statement alludes to Bas's testimony opining that Luanne's assets and income were sufficient to "meet her reasonable expenses" and that Bas "does not have the ability to pay alimony." (Appellant brief, p. 18, citing V.R. 11/30/22 at 10:31:20-10:32).

Having reviewed the cited portions of the videorecording, we agree with Bas that he raised to the trial court his objection to paying maintenance and a general argument that Luanne was not entitled to maintenance since she had sufficient assets or income to meet her reasonable needs in Bas's view. He also raised to the trial court and preserved the argument that he was not financially able to pay maintenance. However, we agree with Luanne to the extent that Bas has not cited to the record to show where more specific arguments about alleged defects in the trial court's calculations or reasoning were raised to the trial court and therefore

-8-

preserved for our review. *See Oakley v. Oakley*, 391 S.W.3d 377, 380 (Ky. App. 2012) (purpose of preservation statement requirements "is so that we, the reviewing Court, can be confident the issue was properly presented to the trial court and therefore, is appropriate for our consideration").[3]

Whether or not an appellant complied with preservation statement requirements "also has a bearing on whether we employ the recognized standard of review, or in the case of an unpreserved error, whether palpable error review is being requested and may be granted." *Id.* We note Bas has not requested review for palpable error.

We also note it is not our responsibility to search the record to see where issues are preserved. *Smith v. Smith*, 235 S.W.3d 1, 5 (Ky. App. 2006). So, though we have reviewed much of the hearing testimony including the cited portion of the videorecording alluded to in Bas's rather general preservation statements and the written motion to alter, amend, or vacate filed by Bas, we decline to search the record further to see where issues are preserved.

---

[3] *Oakley* referred to former CR 76.12(4)(c)(v) (then applicable when *Oakley* was rendered) – which established a preservation statement requirement for appellant briefs like current RAP 32(A)(4). Our Rules of Appellate Procedure have since taken effect on January 1, 2023 – prior to the filing of this appeal. Nonetheless, *Oakley*'s statement about the purpose of preservation statement requirements remains sound, as does its discussion of failure to comply with preservation statement requirements potentially affecting the standard of review.

**Statutory Guidelines for Awarding Maintenance**

KRS[4] 403.200(1) provides in pertinent part that a trial court may only award maintenance if: "it finds that the spouse seeking maintenance: (a) Lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs; and (b) Is unable to support himself through appropriate employment . . . ."

If the trial court determines that it may award maintenance based on a party's lacking sufficient property to provide for one's reasonable needs and being unable to support oneself through appropriate employment, the trial court must then determine the amount and duration of the maintenance award based on all relevant factors. Such factors include the age and financial resources of the party seeking maintenance, the duration of the marriage, the standard of living during the marriage, and the "ability of the spouse from whom maintenance is sought to meet his [or her] needs while meeting those of the spouse seeking maintenance." KRS 403.200(2).

**Guidelines in Precedent for Proper Determination of Whether and in What Amount Maintenance May be Awarded**

In addition to the statutory requirements for awarding maintenance in KRS 403.200, the trial court stated it relied on binding Kentucky precedent when

---

[4] Kentucky Revised Statutes.

ruling on maintenance in its order denying the motion to alter, amend, or vacate. Specifically, it quoted *Casper v. Casper*, 510 S.W.2d 253 (Ky. 1974) for the principle that: "what might be ample for a scullery maid is not necessarily sufficient for one accustomed to the lifestyle of a duchess[.]" *Id.* at 255 (noting that the "standard of living established during the marriage" is a factor to be considered under KRS 403.200(2) consistent with prior law).[5]

The trial court also construed *Perrine v. Christine*, 833 S.W.2d 825 (Ky. 1992) as holding that the spouse seeking maintenance "is not required to liquidate assets in order to maintain the standard of living established during the marriage." We do not read *Perrine* to suggest that the spouse seeking maintenance must always, under all circumstances, be provided with maintenance in sufficient amounts to protect him or her from ever needing to liquidate any assets to maintain the lifestyle enjoyed during the marriage. However, one may reasonably construe

---

[5] Since *Casper*, some Kentucky appellate courts have recognized that it is often not possible for both parties to enjoy the standard of living established during the marriage post-divorce because of the added expense of maintaining two households rather than one. *See e.g.*, *Drake v. Drake*, 721 S.W.2d 728, 730-31 (Ky. App. 1986) (Declining to substitute own judgment for that of the trial court in awarding maintenance but stating in admitted *dicta*: "we question whether many couples could each maintain separately the standard of living they attained together during their marriage."). Further, a well-known treatise of Kentucky domestic relations law has suggested that Kentucky courts have not necessarily always held that a spouse seeking maintenance is entitled to enjoy the marital standard of living post-divorce but have instead sometimes analyzed whether the living standards of long-married parties would be radically disparate without maintenance. *See* Louise Everett Graham and James E. Keller, *Maintenance – Defining reasonable needs under KRS 403.200*, 16 Ky. Prac. Domestic Relations L. § 16:7 (February 2024 update). Nonetheless, the standard of living during the marriage is one factor to consider in making maintenance decisions pursuant to KRS 403.200(2)(c).

KRS 403.200 and *Perrine* to recognize that the spouse seeking maintenance should not necessarily be forced to immediately liquidate all assets to meet his or her reasonable needs and that maintenance may be awarded in just amounts if all statutory factors are properly considered – including the payor spouse's ability to pay maintenance and meet his or her own needs. *See* KRS 403.200(2)(f).

After rejecting the Court of Appeals' interpretation of a trial court order as expecting the party seeking maintenance to immediately liquidate assets, our Supreme Court reversed this Court's decision and reinstated the trial court's order terminating temporary maintenance in *Perrine*:

> The circuit court order does not require Patricia to liquidate, it merely concludes – and reasonably so – that she possesses sufficient property to provide for her reasonable needs and to continue the standard of living established during her marriage, all while maintaining an undisturbed investment principal of $533,000. Like anyone else with financial responsibilities and limitations, Patricia may decide whether and when liquidation, and what investment strategy, is in her best interest. The trial court need only decide whether the party seeking maintenance has available sufficient resources to meet the conditions of KRS 403.200.

833 S.W.2d at 827.

To sum up this precedent cited by the trial court, it is proper to consider the standard of living established in the marriage among other factors set forth in KRS 403.200 and not to assume that the party seeking maintenance should have to immediately liquidate all assets when making maintenance decisions.

-12-

In addition to these guidelines for making maintenance decisions, Kentucky precedent also identifies one factor which should not play a part in maintenance decisions – any fault on the part of the payor spouse. *See Platt v. Platt*, 728 S.W.2d 542, 544 (Ky. App. 1987) (declining to hold "that the party seeking maintenance may punitively use the fault of his or her spouse to extort an amount of maintenance greater than what the statute would legitimately allow").

**Standard of Review of Maintenance Awards**

We review the trial court's underlying factual findings for clear error and the maintenance decision for abuse of discretion. *Age v. Age*, 340 S.W.3d 88, 94-95 (Ky. App. 2011). *See also Perrine*, 833 S.W.2d at 826 (trial court has "dual responsibilities" under KRS 403.200 to make findings of fact and to exercise its discretion in consideration of these facts; thus, to reverse a trial court's decision on maintenance, "a reviewing court must find either that the findings of fact are clearly erroneous or that the trial court has abused its discretion").

**Issue About Trial Court Allegedly Failing to Consider Luanne's Expected Social Security Payments is Not Preserved for Review and Does Not Entitle Bas to Relief**

Bas asserts Luanne testified to receiving $1,245.00 per month in Social Security benefits. However, from our review of the cited portion of her testimony, Luanne testified to not yet receiving Social Security benefits at the time of the hearing. She did, however, testify to receiving documents indicating she

-13-

was eligible to receive $1,245.00 per month in Social Security benefits once she reached the age of 66 years and 4 months. Luanne testified to being 66 at the time of the hearing and her appellee brief indicates she was 67 at the time of its filing.

Bas is correct that the permanent maintenance order does not explicitly discuss Luanne's testimony that she would be eligible to receive $1,245.00 in monthly Social Security benefits in the near future. But he does not provide any citations to the record where he pointed out the trial court's lack of mention of Luanne's Social Security benefits in its permanent maintenance order. In fact, Bas did not point out the permanent maintenance order's lack of discussion about Luanne's expected Social Security benefits or assert any error related to Luanne's Social Security benefits in his written motion to alter, amend, or vacate. And he does not cite to us any videorecording in which his counsel orally argued any error in the trial court's not mentioning Luanne's expected Social Security benefits in the permanent maintenance order.

Furthermore, the written record does not contain any motion filed in which Bas requested that the trial court make additional findings relating to Luanne's actual or expected receipt of Social Security benefits. *See* CR 52.04 ("A final judgment shall not be reversed or remanded because of the failure of the trial court to make a finding of fact on an issue essential to the judgment unless such

-14-

failure is brought to the attention of the trial court by a written request for a finding on that issue or by a motion pursuant to Rule 52.02.").

In sum, given the lack of preservation of any issue about the trial court's alleged failure to consider Luanne's expected Social Security benefits and since Bas has not requested palpable error review, we conclude Bas is not entitled to relief based on this specific issue.

**Trial Court's Factual Findings About Luanne's Assets, Income, Reasonable Needs, and Yearly Shortfall are Not Clearly Erroneous**

In addition to the unpreserved issue of the trial court's alleged failure to consider Luanne's expected Social Security benefits, Bas takes issue on appeal with the trial court's calculations of the total value of assets Luanne has available for investment and the income Luanne could be expected to realize based on a 6 percent return on investment.[6] Bas also claims the trial court failed to take into account the executor fee Luanne would receive for handling her relative's estate and according to him, Luanne would receive over $3 million from her aunt's estate even after taxes and attorney fees are deducted.

---

[6] Luanne suggests in her appellee brief that the trial court was overly optimistic in assuming a 6 percent rate of return on her investments. However, given the lack of cross-appeal, we need not address whether the trial court's application of a 6 percent rate of return was overly optimistic.

Bas also argues on appeal that various items – such as dog-sitting fees, gifts, and church offerings or charitable donations[7] – listed among Luanne's expenses are not reasonable needs. However, he does not cite to the record to show where he raised any issues contesting the characterization of such expenses as reasonable needs to the trial court. And again, we will not search the record and he does not request palpable error review.

Despite these allegations of various calculation errors, we discern no clear error in the trial court's factual findings about Luanne's assets, projected income, or reasonable needs. The trial court noted its awareness that Luanne held millions of dollars' worth of real estate and other assets and that she stood to inherit millions more. The trial court stated Luanne would have to be more careful with her money to avoid selling assets. And the trial court acknowledged that the parties had suffered some financial setbacks in recent years.

Nonetheless, taking into consideration the parties' lavish lifestyle, especially during the latter part of their marriage, and declining to assume that

---

[7] According to Luanne's list of expenses, she spent about $2,500 a year or $200 a month total for gifts for the parties' three adult children and another $200 a month for birthday, wedding, or baby gifts (possibly for people other than the adult children). Though the trial court noted Luanne would like to help her children in the future, the relatively modest expenditures for occasional gifts to the adult children in Luanne's listed expenses do not compel a finding that Luanne was seeking maintenance to support her adult children. Luanne also indicated she spent about $300 per month on dog sitters when she traveled such as going to her Florida condominium. Luanne testified that the dogs were older and did not travel well, and that she needed the dogs for support when she was at home for emotional and mental health reasons.

Luanne should immediately liquidate all assets or consume her inheritance, the trial court found that Luanne required almost $16,000 a month to meet her reasonable needs. And even assuming Luanne could invest about $2.7 million at a 6 percent rate of return, the trial court found Luanne would have a $7,461.24 yearly shortfall.

Despite Bas's arguments to the contrary, the trial court's calculation of Luanne's assets, expenses, and income is supported by substantial evidence and not clearly erroneous. *See generally* CR 52.01; *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003). There is no clear error in the trial court's finding that Luanne would have a yearly shortfall of $7,461.24 when comparing her reasonable expenses to the sum of her rental income and her projected investment income. More generally, there is no clear error in the trial court's finding that Luanne lacked sufficient assets and/or income to meet her reasonable needs.

### No Clear Error in Trial Court Finding Bas Not Credible and Rejecting Bas's Assertions that He Lacked Sufficient Income to Pay Any Amount of Maintenance and Meet His Own Needs

Just as we discern no clear error in the trial court's finding that Luanne lacked sufficient assets or income to meet her reasonable needs, we also discern no clear error in its rejecting Bas's assertions that he lacked the resources to both provide for his own needs and to pay any amount of maintenance to Luanne. As stated in CR 52.01, "Findings of fact, shall not be set aside unless

clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses."

Bas asserted in his motion to alter, amend, or vacate that the trial court erred in finding him able to pay maintenance and provide for his own needs, that he failed to properly consider that some of his businesses were in bankruptcy, and that the assets he retained under the settlement agreement were risky in nature and did not produce steady income.

The trial court acknowledged in its permanent maintenance order that it was hard to predict whether Bas's various business ventures would be successful in the future. The trial court also recognized that one business in particular (CER) was currently in bankruptcy but possibly could recover financially. It found:

> Bass [sic] alluded to complicated business dealings when questioned about the monetary discrepancies between the documentation and his testimony, which seemed to suggest that most were incapable of grasping the complexity of his obligations. However, it is undisputed that CER is now in bankruptcy proceedings and its finances will be subject to orders and reviews by the trustees. It is clear that Bass [sic] received more from CER than he would like to admit, and questions of exactly how the company got into its current financial shape have not been answered to the Court's satisfaction. It is easy to see why Luanne believes Bass [sic] is hiding money.

The trial court indicated that it did not find Bas's testimony about his income and other financial resources credible in its permanent maintenance order.

-18-

And it reiterated that it did not believe Bas's testimony about subsisting on Social Security benefits in its order denying the motion to alter, amend, or vacate. Again, we must defer to the trial court's assessment of the credibility of witnesses. *See* CR 52.01; *Asente*, 110 S.W.3d at 354 ("[J]udging the credibility of witnesses and weighing evidence are tasks within the exclusive province of the trial court.").

Furthermore, Bas's testimony about the income he received was not the only evidence presented on this matter. Instead, financial documents such as bank statements were also submitted to the trial court. And the trial court's finding that Bas was receiving income in much larger amounts than he testified to is supported by substantial evidence, including bank statements.

We further note that although Bas claims that payments on loans are not income, he cites no supporting authority for this proposition. Perhaps he is alluding to specific types of income such as gross income or taxable income.

Nonetheless, there was no clear error in the trial court's finding that Bas was regularly receiving money – as substantiated by bank records – and thus had income in the general sense of the word. *See income*, BLACK'S LAW DICTIONARY (11th ed. 2019) (defining *income* as "[t]he money or other form of payment that one receives, usu. periodically, from employment, business, investments, royalties, gifts, and the like").

Not only did the trial court find that Bas was receiving more income than he claimed, but the trial court also found that Bas was making large payments to third parties in Zelle transfers or similar transactions. This finding was supported by substantial evidence including bank records. And such evidence of Bas making large payments to third parties was relevant to the trial court's consideration of whether Bas could afford to make maintenance payments as well as provide for his own needs. *See* KRS 403.200(2)(f); KRE[8] 401 (defining relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence").

In sum, regardless of whether another factfinder might have found Bas's testimony more credible or weighed or interpreted the evidence differently, there was substantial evidence to support the trial court's finding that Bas did have enough income to support himself with money left over to pay maintenance. So, we cannot disturb the trial court's finding in this regard. *See generally* CR 52.01; *Asente*, 110 S.W.3d at 354.

However, while we discern no reversible error in the trial court's determining that an award of maintenance was appropriate due to Luanne's lacking sufficient assets or income to meet her needs and Bas being able to make

---

[8] Kentucky Rules of Evidence.

maintenance payments while providing for his own needs, the trial court abused its discretion in awarding maintenance in the amount of $2,500 per month.

### Trial Court Abused Its Discretion in Awarding $2,500 Maintenance Per Month Despite Finding that Luanne had a Yearly Shortfall of Less than $7,500

Bas argues on appeal that the trial court abused its discretion in awarding Luanne maintenance in the amount of $2,500 per month, despite finding Luanne would have a shortfall of $7461.64 per year, or $621.77 per month, when comparing her reasonable needs with her projected income.[9]  He contends that KRS 403.200 does not permit a court to award maintenance in amounts exceeding the payee spouse's reasonable needs.

The trial court found Luanne to have reasonable expenses of almost $16,000 per month, so the award of $2,500 per month is less than Luanne's reasonable expenses as found by the trial court.  However, the trial court also found Luanne retained millions of dollars' worth of real property and other assets and received rental income from some properties totaling $18,000 per year.  And it found that Luanne should be able to invest about $2.7 million and earn income

---

[9] Bas argues the amount of the maintenance payment was excessive in his appellate briefs with citations to supporting authority.  But he does not substantively argue with citations to supporting authority that the permanent nature of the award was in error – or in other words, that the duration of the award should have been limited to a set number of years or other time frame. Thus, we reach only the issue of whether the amount of monthly maintenance was excessive and not whether the trial court erred in awarding maintenance on a permanent basis rather than for a limited number of years.

-21-

from her investments at a 6 percent rate of return – resulting in about $166,000 per year in projected investment income.

Given Luanne's reasonable expenses of about $191,000 per year, the trial court determined that Luanne had a shortfall of $7,461.64 per year – which would be $621.77 per month. In essence, the trial court found that Luanne needed $621.77 per month, in addition to the rental income she already received and the investment income which the trial court found Luanne could reasonably obtain, to meet her reasonable needs. And we agree with Bas that Luanne was not entitled to an amount of maintenance greatly exceeding the amount the trial court found that Luanne needed to supplement the income she would already receive to meet her reasonable needs. *See generally* KRS 403.200 (maintenance only to be awarded in just amounts and duration, considering all relevant factors, to party who lacks sufficient income or assets to meet his/her reasonable needs).

The trial court had already taken into account the lavish marital lifestyle in finding Luanne to have almost $16,000 per month in reasonable expenses. Again, the trial court found that given Luanne's income from rentals and projected investment income, Luanne had an anticipated budgetary shortfall of just $7,461.64 per year or $621.77 per month. Awarding Luanne an additional $1,800 or more per month beyond the trial court's finding of what Luanne needed

per month to supplement her own income and so meet her reasonable needs was an abuse of discretion.

We recognize there appears to be a paucity of published Kentucky precedent reversing the amount of maintenance awarded as excessive or beyond what was needed to meet the requesting party's reasonable needs. Instead, Kentucky appellate courts have typically either affirmed a maintenance award entirely, reversed a maintenance award for not awarding sufficient maintenance and remanded the case to increase the amount of maintenance, or reversed a maintenance award with directions to enter an order denying maintenance entirely. Nonetheless, we believe our resolution of this case is consistent with KRS 403.200's emphasis on awarding maintenance only when necessary for the requesting spouse to meet his/her reasonable needs and in just amounts based on consideration of appropriate factors – including: "The financial resources of the party seeking maintenance, including marital property apportioned to him [or her], and his [or her] ability to meet his [or her] needs independently . . ." KRS 403.200(2)(a).

In addition to the amount of maintenance being excessive since it greatly exceeded the amount needed to supplement Luanne's income so she could meet her reasonable needs as found by the trial court, the trial court also erred to the extent that it increased the amount of maintenance based on any implicit

finding of fault on Bas's part.[10] We recognize that the trial court did not explicitly find Bas at fault. But the language of the trial court's order suggests that it raised the amount of maintenance beyond the projected $621.77 per month necessary to supplement Luanne's income to meet her reasonable needs because Bas appeared to spend large sums of money on a paramour:

> [Bas] seems to have no difficulty spending thousands of dollars at a time. This spending includes some very large and suspicious Zelle transaction[s] to third parties on a regular basis (which would be consistent with Luanne's testimony that Bass [sic] is supporting a paramour). While he is free to do with his money as he wishes, it is very hard to argue that one can support one's paramour but cannot support the woman that has devoted her life to you and is the mother of your children. Thus, the Court finds and concludes that Bass' [sic] is able to help Luanne to overcome her anticipated budgetary shortfall and allow her to enjoy a few luxuries.

KRS 403.200 indicates maintenance should only be awarded if the requesting party is unable to meet his/her reasonable needs and only in just amounts, considering relevant factors such as the length and standard of living of the marriage. But increasing a maintenance award beyond what is reasonably needed by the payee spouse to punish the payor spouse for any perceived fault is clearly prohibited by precedent such as *Platt*, 728 S.W.2d at 544. Therefore, we

[10] Bas argues on appeal that the trial court erred in awarding or increasing maintenance based on fault. This argument is at least questionably preserved as Bas argued the trial court "abused its discretion in finding that the Petitioner [Bas] can pay maintenance if he can spend $3,000.00 a month on a paramour" in his motion to alter, amend, or vacate. (R., p. 127).

-24-

reverse the amount of the maintenance award and remand with directions to reduce it to an amount not to exceed the reasonable needs of Luanne as found by the trial court.

Further arguments in the parties' briefs have been determined to lack merit or relevancy to our resolution of this appeal.

## CONCLUSION

For the foregoing reasons, we AFFIRM the trial court's decision to award maintenance, but we REVERSE the amount of maintenance awarded by the trial court and REMAND with directions for the trial court to enter an order reducing Bas's maintenance obligation to an amount not to exceed the reasonable needs of Luanne as found by the trial court.

ALL CONCUR.

BRIEFS FOR APPELLANT:

R. Stephen McGinnis
Greenup, Kentucky

BRIEF FOR APPELLEE:

David J. Guarnieri
Emily M. Shepard
Lexington, Kentucky